# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KINSLEY ENTERPRISES, INC., *et. al.*, : | Civil No. 1:24-CV-00810 |
| Plaintiffs, : | |
| v. : | |
| KINSLEY ROOFING, LLC, *et. al.*, : | |
| Defendants. : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is a motion for default judgment seeking statutory damages, attorney's fees, and a permanent injunction filed by Plaintiffs, Kinsley Enterprises, Inc., and Kinsley Construction, LLC. (Doc. 24.) The claims in this case arise from Defendants Kinsley Roofing, LLC and Nigel Correa's trademark infringement of Plaintiffs' registered marks. (Doc. 1.) For the reasons that follow, the court finds that Plaintiffs have established that they are entitled to default judgment and a permanent injunction. However, Plaintiffs have not established that Defendants engaged in counterfeiting so as to entitle them to statutory damages under the Lanham Act, nor does this case qualify as exceptional to justify an award of attorney's fees. Accordingly, the court will grant in part and deny in part Plaintiffs' motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

As alleged in the complaint, Plaintiff Kinsley Enterprises is the corporation that manages Kinsley Construction, which is a construction company operating in the mid-Atlantic region and "is nationally recognized as a leader in the commercial and residential construction industries." (Doc. 1, ¶¶ 10, 11.) Kinsley Roofing is an LLC which was established in December 2023, and believed to consist of one member, Defendant Nigel Correa. (*Id.* ¶¶ 12, 14.)

Plaintiffs have three trademarks at issue in the instant case: "Kinsley Construction" at U.S. registration number 3920618, "K Kinsley Construction" at U.S. registration number 97638216, and "Kinsley" at U.S. registration number 5589385. (*Id.* ¶¶ 16, 17, 18.) Plaintiffs allege that "[a]s a result of Kinsley Construction's continuous and substantial use . . . [,] advertising, promotion and sales of construction services using the 'Kinsley' name and the Kinsley Marks, its Marks and name [have] come to represent an invaluable symbol of the goodwill of Kinsley Construction and Kinsley Enterprises' business." (*Id.* ¶ 22.) Plaintiffs allege that Defendants are using business cards with a substantially similar mark, a similar stylized font, and a "distinctive 'K'" on its contracts. (*Id.* ¶¶ 26, 27.)

Plaintiffs further allege that they received various calls from customers seeking to resolve or complain of disputes with Defendants Correa and Kinsley Roofing. On January 23, 2024, Plaintiffs received a call "reporting that Correa

represented himself [as] an employee of 'Kinsley Construction,' which he noted was 'right down the road.'" (*Id.* ¶ 28.) This caller further "reported that Correa represented several of Kinsley Construction's projects as being projects that Kinsley roofing had worked on, though this was false." (*Id.* ¶ 31.) On April 2, 2024, Plaintiffs received another call in which the caller stated that "his friend had just sent a check to Correa and [sought] to confirm that Correa was affiliated with Kinsley Construction." (*Id.* ¶ 32.) At this juncture, on April 4, 2024, Plaintiffs sent a cease-and-desist letter to Defendants, to which Defendants did not respond. (*Id.*¶ 33.) On April 16, 2024, Plaintiffs again received a call from an "individual who claimed to have paid Correa $10,000 to repair his roof and was threatening to sue Kinsley Construction for breach of contract, clearly believing there was some affiliation between Kinsley Construction and Kinsley Roofing." (*Id.* ¶ 35.)

Plaintiffs filed the complaint, alleging one count of federal trademark infringement, one count of federal unfair competition, and one count of common law unfair competition against Defendants on May 15, 2024. (*Id.* ¶¶ 42–56.) On the same day, Plaintiffs filed a motion for preliminary injunction and brief in support. (Doc. 3.) The complaint and motion were served on Defendants on June 7, 2024. (Doc. 9, 10.) Defendants filed no entry of appearance or response.

On June 28, 2024, this court ordered Defendants to respond by July 12, 2024, or the motion for preliminary injunction would be deemed unopposed. (Doc.

11.) In an abundance of caution, the court ordered the Clerk of Courts to serve Defendants again with notice to respond to the motion for preliminary injunction. (Doc. 12.) The order was returned undeliverable. (Docs. 13, 14.) No other response was received. The court waited until the expiration of the date set in its July 26, 2024 order and received no response. Accordingly, on August 27, 2024, the court granted Plaintiffs' motion for preliminary injunction. (Doc. 15.)

The court sent the order granting Plaintiffs' motion for preliminary injunction to Defendants, but the order was returned undeliverable. (Doc. 16.) On October 29, 2024, Plaintiffs requested an entry of default, which the Clerk of Courts subsequently entered. (Docs. 18, 20.) The order of the entry of default was similarly returned undeliverable. (Docs. 21, 22.) On March 3, 2025, Plaintiffs filed a motion for default judgment against Defendants. (Doc. 24.) In their motion, Plaintiffs requested a permanent injunction that prevents Defendants from infringing on Plaintiffs' trademarks and sought monetary damages of $36,995.00. (*Id.*) There has been no response to the motion for default judgment. Accordingly, the motion is deemed unopposed and is ripe for review.

## JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the case arises under the laws of the United States, specifically 15 U.S.C. §§ 1114, 1125. The court has supplemental jurisdiction over

Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this court pursuant to 28 U.S.C § 1391.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 permits courts to enter a default judgment following an entry of default. FED. R. CIV. P. 55(b)(2). Parties seeking default judgment, however, are not entitled to it *per se*. *BMO Harris Bank N.A. v. JRD Trucking, LLC*, No. 3:21-cv-02161, 2022 WL 18635326, at *3 (M.D. Pa. Sept. 13, 2022). Rather, entering a default judgment "is left primarily to the discretion of the district court." *Bugg v. Just Wing It, LLC*, No. 18-cv-02399, 2020 WL 1675953, at *2 (M.D. Pa. Apr. 6, 2020) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3rd Cir. 1984)). Three factors guide the court's exercise of discretion: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3rd Cir. 2000). In considering these factors, the court proceeds knowing "the factual allegations in the complaint are treated as proven, except for the contentions related to damages." *Bugg*, 2020 WL 1675953, at *3 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3rd Cir. 1990)).

The *Chamberlain* analysis is not, however, the sole consideration. The court also must be satisfied that the "unchallenged facts constitute a legitimate cause of

action." *United States v. Kline*, 18-cv-02174, 2019 WL 1354150, at *2 (M.D. Pa. Mar. 26, 2019) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688 (3d ed. 2007)).

## DISCUSSION

First, the court will consider whether default judgment is warranted. Second, the court will consider whether a permanent injunction is appropriate to enjoin Defendants from using Plaintiffs' "Kinsley" trademarks. Third, the court will determine whether Plaintiffs are entitled to statutory damages and attorney's fees.

### A. Default Judgment is Warranted

As a threshold matter, the court analyzes the sufficiency of Plaintiffs' state law claims under the same standard as its federal claims. "The test for [Pennsylvania] common law trademark infringement and unfair competition is essentially the same as the test for infringement and unfair competition under the Lanham Act." *Giannone v. Giannone*, 429 F. Supp. 3d 34, 39 (E.D. Pa. 2019) (quoting *Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc.*, 94 F. Supp. 2d 566, 580 (E.D. Pa. 1999)). Plaintiffs' two federal claims are for trademark infringement in violation of 15 U.S.C. § 1114 and unfair competition in violation of 15 U.S.C. § 1125(a). (Doc. 1, ¶ 47–56.)

Proving a violation of either Section 1114 or Section 1125 requires a plaintiff to show: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3rd Cir. 2000). The first two elements of the claim are easily satisfied here, because Plaintiffs have proffered its trademark registration certificates. (Docs. 25-3, 25-4, 25-5.) *See also Members First Fed. Credit Union v. Members 1st Fed. Credit Union*, 54 F. Supp. 2d 393, 403 (M.D. Pa. 1999) ("Registration of a mark under the Lanham Act constitutes *prima facie* evidence of a mark's validity and its ownership by a registrant.").

As for the third element, "[a] likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Pa. State Univ. v. Vintage Brand LLC*, 4:21-cv-01091, 2024 WL 456139, at *22 (M.D. Pa. Feb. 6, 2024) (quoting *A & H Sportswear*, 237 F.3d at 211). The Third Circuit has developed a muti-factor test to analyze the likelihood of confusion between marks. *See generally Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3rd Cir. 1983). When goods are in direct competition, however, courts need "consider only the similarity of the marks themselves" when analyzing this element. *A & H Sportswear*, 237 F.3d at 214.

7

Here, Plaintiffs satisfy the likelihood of confusion factor by alleging actual confusion. Plaintiffs received calls on three separate occasions from customers who believed an affiliation between Plaintiffs and Defendants existed. (Doc. 1, pp. 7–8.)[1] The confusion was great enough that Plaintiffs added a public alert to their website to warn customers of "Defendants' misleading conduct." (Doc. 5, p. 6.) Accordingly, Plaintiffs have established causes of action under the Lanham Act and state law by meeting all three elements of a statutory violation.

Moving to the *Chamberlain* factors, the court is satisfied that they weigh in favor of granting default judgment. The first *Chamberlain* factor asks whether denial of default judgment would prejudice Plaintiffs. It is clear that denying Plaintiffs judgment would lead to continued harm to its business and hinder the ability to protect its trademark.[2] *Cf. JUUL Labs, Inc. v. Zoey Trading LLC*, 21-cv-19299, 2022 WL 970412, at *6 (D.N.J. Mar. 31, 2022) (finding denial of default judgment prejudicial to plaintiff in trademark infringement claim). The second *Chamberlain* factor asks whether Defendants have a litigable defense. "Where a party completely fails to respond to the claims against it, this factor weighs in favor of granting default . . . ." *Bugg*, 2020 WL 1675953, at *5. Since Defendants have

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

[2] Plaintiffs argue that Defendants "have attempted to capitalize on [Plaintiffs'] excellent reputation by usurping the 'Kinsley' name for their own economic benefit." (Doc. 25, p. 4.)

put forth no appearance or defense in this action, it is unlikely Defendants have a litigable defense. Finally, the third *Chamberlain* factor asks whether Defendants' delay is due to culpable conduct, meaning conduct "taken willfully or in bad faith." *Id.* A presumption of bad faith arises when "a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action." *Id.*; *accord Travelers Cas. & Sur. Co. of Am. v. Perlman*, 351 F. Supp. 3d 930, 933–34 (E.D. Pa. 2019) (finding failure to respond to complaint after being served properly "culpable conduct"). Here, there have been numerous attempts to properly serve Defendants with subsequent filings with no success. (*See* Docs. 13, 14, 16, 21, 22.) Default, therefore, is a product of Defendants' culpable conduct. Having found that the *Chamberlain* factors weigh uniformly in favor of default judgment and that Plaintiffs' allegations establish the trademark infringement claims, the court concludes that Plaintiffs are entitled to default judgment.

### B. Injunctive Relief

Plaintiffs seek a permanent injunction to prevent Defendants from using the Kinsley mark or any substantially similar mark. (Doc. 25, p. 8.) A party moving for a permanent injunction must show: "(1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3rd Cir. 2019).

### a. Factor One

As to the first factor, Plaintiffs argue that, for the non-Lanham Act claims, trademark infringement demonstrates an irreparable injury as a matter of law, relying on *S & R Corp. v. Jiffy Lube International*, 968 F.2d 371, 378 (3rd Cir. 1992) (Doc. 25, p. 9.) Similarly, for the Lanham Act claims, Plaintiffs contend that "[t]he Trademark Modernization Act establishes the presumption of irreparable harm when assessing injunctive relief in trademark litigation." (*Id.*) However, this is no longer the law of this circuit. *See Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 217 (3rd Cir. 2014). The *Ferring* court made clear that a Lanham Act violation does not give rise to a presumption of irreparable harm for purposes of seeking an injunction. *Id.* Rather, Plaintiffs must establish that they are "likely to suffer irreparable harm if an injunction is not granted." *Id.* "Loss of control of reputation, loss of trade, and loss of good will" are all bases that can give rise to irreparable harm. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3rd Cir. 1990).

Here, the marks of the two companies are substantially similar, and Defendants have "attempted to create the impression that there is a relationship" with Plaintiffs. (Doc. 1, ¶ 36.) If allowed to continue, Defendants' infringement of Plaintiffs' trademarks and the resulting consumer confusion makes it likely that Plaintiffs would continue to suffer a loss of control of their reputation, loss of

potential customers, and loss of good will. (*Id.* at 37.) This satisfies the first factor, as harm will likely result in the absence of granting a permanent injunction.

### b. Factor Two

As to the second factor, the injuries referenced above are the types of injuries that legal remedies cannot adequately address. *See Crocs, Inc. v. Dr. Leonard's Healthcare Corp.*, 21-cv-13583, 2022 WL 3754858, at *4 (D.N.J. Aug. 30, 2022) (explaining damage to reputation and good will did not have adequate remedy at law). Thus, this factor is also satisfied.

### c. Factor Three

As to the third factor, the balance of harms weighs in Plaintiffs' favor. Any harm Defendants would suffer from an injunction is "self-inflicted." (Doc. 25, p. 10.) *See Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-cv-02662, 2009 WL 2147843, at *8 (D.N.J. July 15, 2009) (emphasizing that defendant would not be subject to harm from permanent injunction if it had not infringed plaintiff's mark); *see also Opticians*, 920 F.2d at 197 (stating that defendant "can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself"). The third factor, therefore, weighs in favor of Plaintiffs.

### d. Factor Four

Finally, as to the fourth factor, the consumer confusion that trademark infringement creates is detrimental to the public interest. *See S & R Corp.*, 968 F.2d at 379. As Plaintiffs indicate, "the public interest in upholding intellectual property protections will be severely undermined" in the absence of relief. (Doc. 25, p. 11.) Accordingly, an injunction in this case to prevent ongoing trademark infringement and to provide business service clarity would serve the public interest. Thus, Plaintiffs are entitled to a permanent injunction enjoining Defendants' future trademark infringement.

## C. Damages

Plaintiffs request $20,000 for statutory damages, under 15 U.S.C. § 1117(c), and $16,995 in attorney's fees, under 15 U.S.C. § 1117(a). (*Id.* at 11–12.) The court will address each claim in turn.

### 1. Statutory Damages

By its plain language, Section 1117(c) limits statutory damages to cases involving the "use of a counterfeit mark." 15 U.S.C. § 1117(c). This section is distinct from Section 1117(a), which concerns the broader category of any trademark violation under the Lanham Act. *See Avco Corp. v. Turn & Bank Holdings, LLC*, 659 F. Supp. 3d 483, 494–95 (M.D. Pa. 2023).

Turning first to whether Plaintiffs are entitled to statutory damages for use of a counterfeit mark, Plaintiffs argue that Defendants have "willfully and purposefully infringed on Plaintiffs' marks for profit," entitling Plaintiffs to damages.  (Doc. 25, p. 12.)  Because Defendants failed to respond to any motion filed to the court and "Plaintiffs cannot ascertain Defendants' actual profits," Plaintiffs believe damages are appropriate to "deter wrongful conduct."  (*Id.*)

However, counterfeiting requires a higher degree of similarity between marks than does trademark infringement.  *See Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 158 (3rd Cir. 2024).  The term "counterfeit" is statutorily defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  In interpreting "substantially indistinguishable," courts have found that a mark differing from a registered mark by a few letters is not a counterfeit.  *See Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 557 (E.D. Pa. 2019) (collecting cases).  For instance, toothpaste bearing the name "Colddate" was not a counterfeit of "Colgate" toothpaste, even when the two marks were on boxes with similar graphical elements.  *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, 486 F. Supp. 2d 286, 291 (S.D.N.Y. 2007); *see also, e.g.*, *Waiter.com, Inc. v. Waitr, Inc.*, 2:16-cv-01041, 2016 WL 7443656, at *4 (W.D. La. Dec. 22, 2016) (finding "waitr" trademark was not a counterfeit of "waiter.com" trademark).  These holdings reflect the well-established proposition

13

that a "colorable imitation" does not rise to the level of counterfeiting. *See Lontex*, 107 F.4th at 158.

In determining whether a mark is counterfeit, the Third Circuit measures "the 'overall impression' ordinary consumers would have upon encountering the marks." *Id.* This court recently considered the counterfeit issue in a comparable case, determining that while a permanent injunction was appropriate, statutory damages were not. *See Laughing Smith, LLC v. PPNC, Inc.*, No. 1:23-CV-01285, 2024 WL 4253346, at *1 (M.D. Pa. Sept. 20, 2024). In *Laughing Smith*, plaintiff sought relief for its "Bubble Beads" product that it believed to be infringed by defendant's "Bubble Beadz" product. *Id.* The court found that because "Laughing Smith does not allege that PPNC's mark was a counterfeit, just that it was very similar to Laughing Smith's" mark, statutory damages were not appropriate because the "Bubble Beadz" product was not a counterfeit mark. *Id.* at *4.

Here, Plaintiffs do not meet the heightened factual basis for the court to conclude that Defendants used a counterfeit mark. Similar to *Laughing Smith*, Plaintiffs do not allege that Defendants' mark was a counterfeit, just that it was very similar to Plaintiffs. (*See* Doc. 1, ¶ 26) (Defendants "are currently using business cards with a mark substantially similar to the Kinsley Marks."). While Defendants' mark may be "substantially similar" to Plaintiffs, this is insufficient to warrant a finding that the mark is counterfeit. *See Lontex*, 107 F.4th at 158. As

14

shown in the complaint, Defendants' business cards and contracts use a mark with a similar "stylized font and distinctive 'K,'" but the mark also includes the words "Roofing LLC," which differentiates the two marks for counterfeit purposes. *See Lontex Corp.*, 384 F. Supp. 3d at 557. (*See* Doc. 1, ¶¶ 26–27.)  The inclusion of a different company name and address are enough to put an ordinary consumer on notice that the marks are not the same.  Further, Defendants' false representations about their relationship with Plaintiffs resemble "colorable imitation," which does not satisfy the counterfeit standard. *See Lontex*, 107 F.4th at 158; (Doc. 1, p. 8.) While Defendants' failure to participate in the litigation could be classified as "willful" infringement, Plaintiffs fail to prove that this case involves the "use of a counterfeit mark." 15 U.S.C. § 1117(c)(2).  Therefore, the court cannot conclude, on the record before it, that Defendants' mark rises to the level of counterfeit under the Lanham Act.

Plaintiffs' motion for default judgment seeks statutory damages reserved for counterfeiting cases.  Plaintiffs presented no argument as to why they are entitled to other damages available for ordinary trademark infringement, such as "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action." 15 U.S.C. §1117(a).  Accordingly, Plaintiffs have not shown they are entitled to statutory damages under § 1117(c).

## 2. Attorney's Fees

Plaintiffs also seek attorney's fees pursuant to 15 U.S.C. § 1117(a).  Under the Lanham Act, courts "in exceptional cases may award reasonable attorney fees." 15 U.S.C. § 1117(a).  While the statute does not explicitly define the term "exceptional," generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful and the award is "justified by equitable considerations." *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir.2000).  The Supreme Court has held that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 545 (2014).[3]

Evidence of culpable conduct and willful infringement "does not automatically render a case exceptional," but can be a consideration, particularly when defendants have clear knowledge of their infringing conduct. *Hershey Co. v. Anykiss*, No. 1:18-CV-00843, 2019 WL 5692738, at *5 (M.D. Pa. Nov. 4, 2019) (ruling that attorney's fees were appropriate because defendants continued to use a KISSES trademark that was confusingly similar with plaintiffs even after

---

[3] While the *Octane* decision does not rule on the meaning of 15 U.S.C. § 1117(a) explicitly, the Third Circuit has held "that the Court was sending a clear message that it was defining 'exceptional' not just for the fee provision in the Patent Act, but for the fee provision in the Lanham Act as well." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014).

defendants were denied attempts to register their patent and partner with plaintiffs); *see also World Ent., Inc. v. Brown*, No. CIV.A. 09-5365, 2011 WL 2036686, at *3 (E.D. Pa. May 20, 2011), aff'd, 487 F. App'x 758 (3d Cir. 2012) (holding that a case was exceptional when defendant received numerous cease and desist letters and continued to infringe upon plaintiff's mark up until the time of a damages hearing); *Piquante Brands Int'l, Ltd. v. Chloe Foods Corp.*, No. CIVA3:08CV4248FLW, 2009 WL 1687484, at *2–7 (D.N.J. June 16, 2009) (finding that "due to Defendant's abject failure to respond in any fashion to Plaintiffs' Complaint, the Court can infer that the trademark infringement was indeed willful" after defendant asked plaintiffs to set aside the Entry of Default, was refused, and then continued its infringement).

Unlike *Hershey Co.*, *World Ent., Inc.*, and *Piquante Brands Int'l, Ltd.*, here there has been no responsive communication from Defendants whatsoever. *See* 2019 WL 5692738, at *5; 2011 WL 2036686, at *3; 2009 WL 1687484, at *2–7. While attempts were made to serve Defendants with multiple filings subsequent to service of the complaint, there is a lack of proof that Defendants received those filings.  (*See* Docs. 13, 14, 16, 21, 22.)  Plaintiffs' argument that Defendants "willfully adopted Plaintiffs' trademarks to deceive the public and capitalize on Plaintiffs' goodwill," does not automatically render this case exceptional in the

17

absence of further proof of Defendants' continued infringement. (Doc. 25, p. 13) (*See Hershey Co.*, 2019 WL 5692738, at *5.)

Plaintiffs rely on *Securacomm* to argue why they present a "model case for the award of attorney's fees." (Doc. 25, p. 13.) In *Securacomm*, the Third Circuit upheld the district court's award of attorney's fees because the case "involve[d] a sweeping attempt to beat a financially weaker opponent through the use of vexatious litigation." 224 F.3d at 283. *Securacomm* is distinguishable from the instant case because Defendant has not engaged in vexatious litigation conduct. Accordingly, the court will not exercise its discretion to award attorney's fees of $16,995 in this case.

## Conclusion

For the reasons set forth above, Plaintiffs are entitled to default judgment and a permanent injunction enjoining Defendants' future trademark infringement. However, Plaintiffs have failed to demonstrate they are entitled to statutory damages for counterfeiting under 15 U.S.C. § 1117(c)(2) and attorney's fees under 15 U.S.C. § 1117(a). Therefore, the court will grant in part and deny in part Plaintiffs' motion. An appropriate order will issue.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Judge  
Middle District of Pennsylvania

Dated: August 6, 2025